**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

DIANE MORRISON-GOFF,      )
           )
      **Plaintiff,**      )
           )
vs.           )     **Case No. 08-CV-560-TLW**
           )
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,    )
           )
      **Defendant.**     )

**OPINION AND ORDER**

Plaintiff Diane Morrison-Goff seeks judicial review of a decision of the Commissioner of

the Social Security Administration denying her claim for disability insurance benefits under Title II

of the Social Security Act ("SSA"), 42 U.S.C. § 416(i).  In accordance with 28 U.S.C. § 636(c)(1)

& (3), the parties have consented to proceed before a United States Magistrate Judge.[1]  [Dkt. # 12].

**<u>Introduction</u>**

In social security cases, plaintiff bears the burden of establishing a prima facie case of

disability at steps one through four of the five step evaluation.[2]  <u>Nielson v. Sullivan</u>, 992 F.2d 1118,

---

[1]  Plaintiff's application for disability insurance benefits was denied initially and on reconsideration.  A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held on January 24, 2007.  [R. 351].  By decision dated April 26, 2007, the ALJ entered the findings that are the subject of this appeal.  [R. 13].  The Appeals Council denied plaintiff's request for review on August 11, 2008.  [R.4].  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. § 404.981.

[2]  The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience.  <u>Ringer v. Sullivan</u>, 962 F.2d 17 (10th Cir. 1992) (unpublished), citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).

1120 (10th Cir. 1993).  "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of the impairment during the time of her alleged disability.  20 C.F.R. § 404.1512(b).  A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C § 423 (d)(3).  "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508.  The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians.  20 C.F.R. § 404.1513(a).

## Background

Plaintiff was born on November 2, 1956. [R. 331].  She was 50 years old at the time of the hearing before the ALJ.  She has an eleventh grade education.  [R. 356].  Plaintiff is 5'1" tall and weighs 200 pounds.  On September 28, 2002, plaintiff married Dellano Goff.  [R. 49].  Plaintiff's husband is eleven years her senior.  [R. 49].  She does not have children.  [R. 58].  Plaintiff has a history of severe abdominal pain and excessive bleeding.  In 1987, she was diagnosed with uterine fibroids, and pelvic inflammation disease.  [R. 139-142, 200].  Plaintiff has had two miscarriages. [R. 144].  In September 1999, plaintiff had a total hysterectomy, including the removal of her uterus, fallopian tubes and ovaries.  [R. 157].  From 1999 to 2004, plaintiff was treated for post-menopausal hot flashes, anxiety and situational depression.  [R. 274, 289].  Her hysterectomy was emotionally

2

upsetting.  [R. 126, 291].

From 1986 through 2006, plaintiff's medical records show treatment received for asthma, bronchitis, and allergies.  [R. 101, 341].  During this time, plaintiff smoked cigarettes, although her treating physician frequently recommended that she stop smoking.  [R. 251, 285, 289, 298].  Since 1999, plaintiff experienced a symbiotic disorder where plaintiff takes on the symptoms of illnesses of her siblings and father, whenever they became ill.  [R. 265, 283, 291, 298].

On three prior occasions, plaintiff filed for disability insurance benefits.  Her first two claims, alleging onset dates of July 20, 1976 and April 15, 1984, were denied.  [R. 47].  Sometime prior to 1987, plaintiff was admitted to St. John Medical Center for trauma to her legs following an automobile accident.  [R. 141].  She experienced temporary paralysis in her legs.  Plaintiff filed a third claim for disability benefits, alleging an onset date of April 23, 1985.  [R. 47].  From this claim plaintiff was awarded disability insurance benefits in October 1985.  On June 30, 1999, plaintiff's treating physician noted in her examination records, "She is on disability secondary to MVA several years ago, had temporary paralysis.  Now has full strength in the legs but has chronic aching and pain in the legs but is not on any chronic medicine for this."  [R. 300].  In October 2004, the Social Security Administration ceased plaintiff's benefits.  Plaintiff did not appeal this decision.  [R. 47]. On February 1, 2005, plaintiff filed the present application for benefits, alleging she has been disabled since April 23, 1985.  [R. 49].  Plaintiff alleges that on August 8, 2005, she was injured in a second automobile accident as a result of her husband allegedly driving their car into a brick wall, causing the air bags to deploy.  Plaintiff was taken to St John Medical Center for a bruised right breast and ribs.  Plaintiff contends that prior to the accident and before going to the emergency room she was having abdominal pains.  [R. 253].

Plaintiff's work history is minimal.  From 1978 to 1984, she was employed as a seamstress in a clothing factory, and in 2003 she was a cafeteria worker in a high school.  [R. 59].  In claiming an onset date of April 23, 1985, plaintiff alleges an inability to work because she "can't lift or swat [sic]," "sit or stand for extended periods of time," "constant pain" and "breathing difficulties."  [R. 49, 58].  She claims physical impairments due to bronchitis, asthma, legs, knees and back.  [R. 58].  At the hearing, plaintiff's attorney added a claim for obesity [R. 355] and in her opening brief, he characterized plaintiff's knees and back pain as secondary to fibromyalgia.  [Dkt. # 17 at 2-9].

In assessing plaintiff's qualification for disability benefits, the ALJ found that plaintiff has not engaged in any substantial gainful activity since April 23, 1985; she met the insured status requirements through April 26, 2007; her severe impairments are obesity, degenerative joint disease of the left knee, minor disc disease of the lumbar spine, and osteopenia.  [R. 17].  The ALJ found that although plaintiff has a history of menometrorrhagia,[3] anemia, hypertension, depression, anxiety, and vision deficiency, these conditions are non-severe.  [R. 15].  The ALJ also found plaintiff's claim of fibromyalgia and chronic obstructive pulmonary disease ("COPD") as "medically nondeterminable."  [R. 16].  The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments and that she has the residual functional capacity (RFC) to perform light exertion work.  [R. 16].  At step four, the ALJ determined that plaintiff has no past relevant work.  [R. 18].  At step five, the ALJ considered plaintiff's young age of 28 years old at the time of her alleged onset date, limited education, work experience, RFC, and the Medical-Vocational Guidelines ("Grids") and found that

_____

[3]  Menometrorrhagia is defined as excessive uterine bleeding, both at the usual time of menstrual periods and at the other irregular intervals.  Menometrorrhagia can be a sign of benign fibroid tumors in the uterus.  See, www.medterms.com.

4

plaintiff could perform a full range of light work.  Based on her RFC for a full range of light work, the ALJ determined that under Rule 202.10, the Grid directs a conclusion that plaintiff is not disabled.  [R. 19].  This finding was at step five of the sequential inquiry outlined in <u>Williams v. Bowen</u>.  <u>See</u> <u>supra</u> n.2 at 1.

### <u>Issues</u>

Plaintiff raises three issues on appeal:

(1)     Whether the ALJ's finding that plaintiff's fibromyalgia is a nondeterminable condition is supported by substantial evidence.

(2)     Whether the ALJ failed to properly consider the treating physician's opinion.

(3)     Whether the ALJ failed to properly consider plaintiff's credibility.

(4)     Whether the ALJ's RFC assessment is supported by substantial evidence.

[Dkt. # 17 at 4].

### <u>Discussion</u>

The Court's role in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied.  <u>See</u> <u>Briggs ex. rel. Briggs v. Massanari</u>, 248 F.3d 1235, 1237 (10th Cir. 2001); <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1019 (10th Cir. 1996); and <u>Castellano v. Secretary of Health & Human Serv.</u>, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence."  <u>O'Dell v. Shalala</u>, 44 F.3d 855, 858 (10th Cir. 1994). "However,

the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Young v. Apfel, 198 F.3d 260 (10th Cir. 1999) (unpublished)[4] (citing Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966)).  The Court is to consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," but the Court will not reweigh the evidence or substitute its judgment for that of the ALJ.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

As her first assignment of error, plaintiff contends the ALJ failed to consider all the evidence in finding that plaintiff's alleged fibromyalgia is a nondeterminable medical condition.  Plaintiff contends that her knee pain, back pain, and accompanying limitations are, in part, due to fibromyalgia and that her treating physician, Dana Morrel, M.D., cited fibromyalgia as a condition which supported her opinion regarding plaintiff's limitations.  Plaintiff contends the ALJ should have considered fibromyalgia as a non-severe condition, singly and in combination with her other severe conditions in assessing her RFC.  [Dkt. # 17 at 4-5].

The ALJ acknowledged plaintiff's claim that her left knee and back impairments are severe conditions.  However, he found that Dr. Morrel's examination notes do not support her diagnosis that plaintiff's knee and back impairments are fibromyalgia.  He explained:

> Two additional impairments alleged by the claimant are considered by the Administrate Law Judge to be medically nondeterminable.  These are fibromyalgia and COPD.[5]  One report mentions a diagnosis of fibromyalgia having been made.

---

[4]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1:  10th Cir. R. 32.1.

[5]  Plaintiff does not challenge the ALJ's finding that her claim of COPD is not medically determinable.  Therefore, plaintiff has waived any objection to this finding on appeal.

> But accompanying physician notes do not support a finding that a diagnosis has ever been made (Exhibit 7F, p. 8).

[R. 16].  Dr. Morrel's medical records support the ALJ's determination.  A review of Dr. Morrel's

physician notes and other relevant data follows.

(1)     On July 20, 1999, plaintiff exhibited increased problems with depression and anxiety over the possibility of not being able to have children.  She "states that whenever her siblings become sick, she takes on their illness as well."  [R. 291].

(2)     On July 13, 2000, plaintiff was "tearful" and complained that "her bones ache real bad all over."  Plaintiff's brother has coronary artery disease and was having "chest pain."  Dr. Morrel recorded "when she is with someone who has a medical problem and they have symptoms, she tends to take on their symptoms and when she is away from the situation the symptoms resolve."  [R. 296].

(3)     On July 19, 2001, Dr. Morrel's impression was speculative:  "I think her aching all over is more of a fibromyalgia type problem."  However, as a treatment plan Dr. Morrel recommended "routine exercise by walking and some simple stretches for her myalgias and stress reduction."  Dr. Morrel was considering a prescription for an antidepressant if exercise did not help.  [R. 294].

(4)     On September 19, 2001, Dr. Morrel noted plaintiff's back and rib pain resulted from over two or three days of congestion and coughing.  "Diane presents today complaining of pain in the lumbosacral area on the right for the past month. . . Over the past two or three days she has had nasal congestion, drainage and cough of clear phegm and is now sore under her ribs."  Her "impression" was "right lumbosacral

7

muscular sprain.   No evidence to suggest radiculopathy.   Upper respiratory infection." [R. 284].

(5)     On November 14, 2001, plaintiff complained of coughing with a congested nose and chest.  Dr. Morrel noted plaintiff's "back hurts because she has coughed so much" and she is "under increased stress as her brother was recently hospitalized for pneumonia." [R. 283].

(6)     On April 15, 2002, plaintiff had pressure behind the eyes, nasal congestion and drainage, sore throat and coughing.  Dr. Morrel's diagnosis was sinusitis, secondary to headaches.  Dr. Morrell doubted her condition to be "temporal arteritis."[6] She also noted plaintiff had recently been exercising and had lost 10 pounds.  [R. 268].

(7)     On January 2, 2003, plaintiff complained of left knee pain.   Dr. Morrel's "impression" was "left knee pain most likely secondary to chondromalacia [degeneration of the cartilage] or tendonites [inflammation of the tendons].[7]

(8)     Also on January 3, 2003, a radiology report on plaintiffs's left knee read, "Medial joint space narrowing with early spondylytic degenerative changes are present about the knee.  A bone island is present in the proximal tibia.  Sclerotic degenerative changes are present along the anterior patella and patellar femoral articular margins.  The osseous, joint and soft issues are otherwise unremarkable."  Dr. Morrel noted

---

[6]  Temporal arteritis is defined as the inflammation of the temporal arteries.  The blood vessels that run along the temples after they branch off from the carotid artery in the neck.  See, www.medical-dictionary.com.

[7]  For complete definitions, See www.medterms.com.

8

"X-ray consistent with arthritis."  [R. 324].

(9)    On January 28, 2003, a physical therapy report shows that plaintiff did not complete

her expected frequency and duration of treatment.  The goal of her physical therapy

was to "increase gastrocnemius flexibility, perform sit to stand without pain, and

walk ½ mile without pain."  [R. 323].

(10)   On October 6, 2003, Dr. Morrel noted on a radiology report of plaintiff's back, "X-

ray shows minor arthritis, no crushed or fractured vertebrae."  [R. 325].  Dr. Morrel

observed, "She's been under increased stress recently secondary to her husband being

hospitalized.  Her brother has also been hospitalized and is in serious condition and

not expected to live."  [R. 324].

(11)   In October 2004, plaintiff's disability insurance benefits were terminated.   On

October 11, 2004, plaintiff complained of severe pain in the lower extremities and

lower back pain, difficulty getting up and doing anything, pain in the right breast, bad

headaches, depression, upper respiratory congestion and earaches.  [R.262].

(12)   On January 31, 2005, plaintiff advised Dr. Morrel that her disability coverage was a

result of a motor vehicle accident.  She said that the accident severely injured her

legs, back, and neck.  She could not sleep, resulting in depression and anxiety and she

was still trying to quit smoking.  [R. 256].  On this same date Dr. Morrel prepared a

letter showing a diagnosis of "arthritis and fibromyalgia."  [R. 257].

(13)   On February 1, 2005, plaintiff filed her present application for disability insurance

benefits.  [R. 49].

(14)   On June 27, 2005, plaintiff requested an appointment with Dr. Morrel, complaining

9

of a knot in her right thigh and pain in her back and legs, and advising that she needed "some paper work filed [sic] out." [R. 342].

(15)    On June 30, 2005, Dr. Morrel completed her Medical Source Opinion of Residual Functional Capacity. She opined plaintiff could sit, stand/walk, lift/carry, gasp/handle/finger and feel on an "infrequent" basis and she needed rest because of "pain" and "fatigue." Her medical finding was stated simply as "fibromyalgia and osteoarthritis spine and knees." [R. 248].

(16)    On July 17, 2005, plaintiff complaints of severe stress. Dr. Morrel recommends exercise. [R. 345-6].

(17)    On August 8, 2005, plaintiff is in the emergency ward on complaints of an automobile accident, injuring her breast and ribs. [R. 253].

(18)    On October 25, 2005, Dr. Morrel noted plaintiff complains she cannot sleep, that she is in constant pain in her back which radiates to her left shoulder and upper extremities. She has rib pain in the left side which started as a result of the motor vehicle accident. It hurts to take deep breaths. She gets dizzy changing positions from sitting to standing, knees hurt. Plaintiff was still smoking. [R. 251].

(19)    On September 30, 2006, plaintiff complaints of abdominal pain, inability to eat, and rib pain from the car wreck. [R. 341].

(20)    On January 10, 2007, Dr. Morrel wrote, plaintiff complains of lower back pain and she is seeking refill of her medications. The recent death of her ex-boyfriend was also noted. [R. 339].

The ALJ specifically referenced Exhibit 7F, p. 8, which is the letter prepared by Dr. Morrel

on January 31, 2005.  It is dated one day prior to plaintiff's present February 1, 2005, application for

disability benefits.  Exhibit 7F, p. 8 provides in its entirety:

Monday, January 31, 2005

To Whom It May Concern:

> Diane Morrison (11/02/56) was seen in our office today for continued
> complaints of pain.  She reports she cannot stand for more than 5
> minutes.  She is unable to squat, push, pull or lift greater than 3
> pounds.  She is unable to sit in one position for greater than 15
> minutes. Ms. Morrison has arthritis and fibromyalgia. Her treatment
> protocols have not helped greatly for her pain and most have been
> cost prohibitive.  Thank you for your consideration.

[R. 257].  The ALJ rejected this diagnosis as unreliable.  He stated, "Her self-described limitations

to Dr. Morrel (Exhibit 7F, p.8) are based upon her own complaints rather than objective testing by

Dr. Morrel or any other source."   [R. 18].   Based on the above summary of Dr. Morrel's

accompanying examination notes and other relevant dates, the Court finds that substantial evidence

supports the ALJ's determination that a diagnosis of fibromyalgia is medically nondeterminable in

this record.  Any other determination would require the Court to reweigh the evidence.

Plaintiff failed to meet her burden of proof to support a medically determinable diagnosis of

fibromyalgia in this case.  Fibromyalgia is a "rheumatic disease that causes inflammation of the

fibrous connective tissue components of muscles, tendons, ligaments and other tissue.  It is a chronic

condition, causing long term but variable levels of muscle and joint pain, stiffness and fatigue."

Brown v. Barnhart, 182 Fed.Appx. 771, 773 (10th Cir. 2006) (citing Benecke v. Barnhart, 379 F.3d

587, 589 (9th Cir. 2004)).  Even though it may be diagnosed entirely on the basis of a patient's

reports and other symptoms, those reports are compared to the "clinical signs and symptoms

supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines to

11

include primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specific tender points on the body." Id. (citing Green-Younger v. Barnhart, 335 F.3d 99, 107 (2nd Cir. 2003)).

In this instance, substantial evidence supports the ALJ's determination that plaintiff's subjective complaints of pain did not support a medical diagnosis of fibromyalgia. Her subjective report of symptoms to Dr. Morrel could just as well originate from one or more of a combination of her severe impairments including obesity, degenerative joint disease of the left knee, minor degenerative disc disease of the lumbar spine, and osteopenia as found by the ALJ. This is consistent with plaintiff's own declaration of impairments on her application form: bronchitis, asthma, legs, knees, and back. [R. 58]. Although there are no laboratory tests for the presence or severity of fibromyalgia, "[t]he principal symptoms are pain all over, fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other disease of a rheumatic character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." Brown, 182 Fed.Appx. at 773 (citing Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)). There is no record of Dr. Morrel performing a multiple tender spot check on plaintiff's body in conjunction with her speculative diagnosis of fibromyalgia, or at any time prior to plaintiff's request for Dr. Morrel to complete the Medical Source Statement in this case. The ALJ also correctly points out that Dr. Morrel's treatment records are inconsistent with her diagnosis of fibromyalgia. Thus, the Court finds no merit in plaintiff's first assignment of error.

As her second issue of error, plaintiff contends the ALJ failed to consider all the evidence when he rejected Dr. Morrel's opinion. Plaintiff complains that the ALJ improperly rejected both

12

Dr. Morrel's opinion and the opinion of an agency physician Lise Mungul, M.D., thereby basing his decision on a limited review of the evidence and on a layman's interpretation of the medical record. [Dkt. # 17 at 6].

The proper procedure for evaluating the opinion of a treating physician is well established. "Under the regulations, the agency rulings, and our case law, an ALJ must give good reason in the notice of determination or decision for the weight assigned to a treating physician's opinion." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527 (d)(2) and Social Security Ruling 96-2p, 1996 WL 374188 at 5)). "The type of opinion typically accorded controlling weight concerns the 'nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.'" Lopez v. Barnhart, 183 Fed. Appx. 825, 827 (10th Cir. 2006) (unpublished).[8] Generally, an ALJ should give more weight to opinions from treating physicians. Watkins, 350 F.3D at 1300 (citing 20 C.F.R. § 404.1527(d)(2)). However, it is error to give the opinion controlling weight simply because it is provided by a treating source. Id.

In determining whether the opinion should be given controlling authority, the analysis is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Id. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion

_____

[8] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1:  10th Cir. R. 32.1.

13

is consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either

of these respects, then it is not entitled to controlling weight."  Id.

Dr. Morrel's medical opinion is contained in her letter dated January 31, 2005.  See supra at

11.  [R. 257].  The ALJ found that Dr.Morrel's opinion was not entitled to controlling weight.  The

ALJ gave specific findings to support this conclusion.  The ALJ said:

> In a note by treating source Dana Morrel, M.D. dated January 31, 2005, Ms.
> Morrison was reported to claim inability to stand beyond 5 minutes.  She also
> declared to Dr. Morrel that she could not lift objects weighing over 3 pounds or sit
> in position for over 15 minutes.  (Exhibit 7F, p.8).  On June 30, 2005, Dr. Morrel,
> diagnosed the claimant with fibromyalgia and osteoarthritis of the back and knees.
> The claimant spoke of a knot in her right thigh and of pain in her back and legs
> (Exhibit 9F, pgs. 1-2).  On this occasion, Dr. Morel composed a medical source
> opinion that placed strict limitations upon Ms. Morrison's capacities.  The claimant
> was indicated to be able to lift only less than 10 pounds.  Standing/walking and
> sitting were each restricted by Dr. Morrel to no more than an hour during an 8-hour
> workday.  An hour or less was also the limit she gave for the claimant's reaching,
> pushing/pulling, gasping, handling, and fingering (Exhibit 6F). . . .Her self-described
> limitations to Dr. Morrel (Exhibit 7F, p.8) are based upon her own complaints rather
> than objective testing by Dr. Morrel or any other source.  The same absence of testing
> is apparent in Dr. Morrrel's medical source opinion of June 30, 2005.  (Exhibit 6F).
> Dr. Morrel's records include no objective signs or symptoms that would justify the
> very limited residual functional capacity she gives Ms. Morrison.  What objective
> tests there are show only mild problems with the lumber [sic] spine and left knee
> (Exhibit 7F, pgs. 75-76).

[R. 18].  Second, if the ALJ finds the treating physician's opinion is not well-supported by medically

acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial

evidence in the record, it is entitled to deference and must be evaluated in reference to the factors

enumerated in 20 C.F.R. § 404.1527.  Those factors are:

> (1) the length of the treating relationship and the frequency of examination, (2) the
> nature and extent of the treatment relationship, including the treatment provided and
> the kind of examination or testing performed, (3) the degree to which the physician's
> opinion is supported by relevant evidence, (4) consistency between the opinion and
> the record as a whole, (5) whether or not the physician is a specialist in the area upon

14

which an opinion is rendered; and (6) other factors brought to the ALJ's attention
which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).  The ALJ must give

good reasons in his decision for the weight he ultimately assigns the opinion.  Id. (citing 20 C.F.R.

§ 404.1527(d)(2)).  The Tenth Circuit has held that a treating physician's opinion must be given

substantial weight "unless good cause is shown to the contrary."  Bernal v. Bowen, 851 F.2d 297,

301 (10th Cir. 1988) (citing Frey v. Bowen, 816 F.2d at 513).  "[A] treating physician's report may

be rejected if it is brief, conclusory and unsupported by medical evidence."  Id.  In this case, the

Court finds that Dr. Morrel's opinion was brief, conclusory and unsupported by medical evidence

and, as such, was properly rejected by the ALJ.  Because Dr. Morrel merely provided her conclusory

opinion, the ALJ was not required to provide a factor-by-factor analysis of her opinion.  In Lierz v.

Astrue, 2009 WL 1956477 (D. Kan) (unpublished) the court stated, "the court will not require a

specific factor-by-factor evaluation of the evidence and the opinions so long as the 'ALJ's decision

is specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight.'"  Id. (citing Oldman v. Astrue, 509 F.3d

1254, 1258 (10th Cir. 2007).  In Oldman the Tenth Circuit held:

> [W]ell-supported medical evidence satisfies the requirement that the ALJ's decision
> be sufficiently specific to make clear to any subsequent reviewers the weight the
> adjudicator gave to the treating source's medical opinion and the reasons for that
> weight.  That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each
> of the medical opinions before him does not prevent this court from according his
> decision meaning review.

Id.

Plaintiff argues that the ALJ also rejected the opinion of Dr. Mungul who opined that

plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours

15

in an eight hour day, sit about 6 hours in an 8-hour day with unlimited capacity to push and/or pull.

Dr. Mungal opined that plaintiff had a normal range of motion of the joints, 5/5 strength in all

extremities, her gait was safe and stable with no obstructive lung deficiency.  [R. 221].  Plaintiff is

correct that the ALJ did not adopt the RFC assessment of Dr. Mungul.   However, the ALJ's

assessment was not speculative or unsupported by the record.   The ALJ cited and relied on the

opinion  of the consultative evaluation performed by Moses A. Owoso, M.D. on April 21, 2005. [R.

18].   The ALJ found:

> A consultative evaluation by Moses A. Owoso, M.D. on April 21, 2005 indicated no
> problems with Ms. Morrison's back or her extremities.  There was no swelling of her
> joints and her spine alignment was normal.  There was no localized or muscle spasm
> and her straight leg raising was negative for radicular pain bilaterally.  Ms. Morrison
> was observed to have a normal and safe gait and she did well sitting, standing and
> rising form a sitting to a standing position.  Dr. Owoso's sole impression was Ms.
> Morrison's complaint of back pain, without radiculopathy (Exhibit 4F).

[R. 18].  The Court further finds that the ALJ properly gave specific, legitimate reasons for rejecting

Dr. Morrel's opinion as required by Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990).   He

concluded, "In this case, Dr. Morrel's opinion as set forth in her medical source opinion lack the

requisite supportability of objective evidence from testing.  Therefore, the opinion cannot be granted

controlling weight.  As stated above, Dr. Morrel did not perform the multiple tender spot check on

plaintiff's body in conjunction with her speculative diagnosis of fibromyalgia.  Further, Dr. Morrel's

opinion is contrary to her treatment notes which are consistent with the radiology reports she

reviewed as part of her treatment plan for plaintiff, which included exercising, physical therapy and

possibility antidepressants.  Thus, the Court finds that the ALJ's rejection of Dr. Morrel's opinion

was not based improperly on a limited review of the evidence or a layman's interpretation of the

medical evidence.

16

As her third assignment of error, plaintiff contends the ALJ failed to properly consider plaintiff's credibility.  [Dkt. # 17 at 4].  She claims that he erred by not considering all the factors relating to plaintiff's credibility and by not linking his findings to the evidence.  [Dkt. # 17 at 8].  The Court disagrees.

First, the ALJ set forth a summary of plaintiff's testimony:

At the hearing, Ms. Morrison said she is often unable to get out of bed in the morning.  This is because of the pain and swelling in her knees.  She alleges she is able to sit only for a brief time before she begins to be uncomfortable.  She put her lifting limit at approximately 5-10 pounds.  Her tolerance for standing was placed at 15-20 minutes.  She described herself as nervous and subject to heart pounding and shakiness.  Ms. Morrison claimed she spends 60% to 70% of the day lying in bed or on her recliner.

[R. 17].  In assessing plaintiff's credibility, the ALJ stated:  "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  [R. 18].

Contrary to plaintiff's contention, the ALJ referred to specific evidence to support his credibility determination.  He referenced her obesity and problems with her knees and legs but noted that she had sought only minimal treatment for these impairments.  He observed:

The claimant is somewhat overweight (63 inches, 198 pounds; Exhibit 4F, p. 1) and has some problems with her low back and knees.  But she has never had surgery for either of these conditions.  Her problems with her back and knees appear to be fairly mild.  While she would be unable to do heavy lifting or exertion, her problems could be reasonably accommodated for her to perform the light work cited in her residual functional capacity.

[R. 16].  In recognizing that although plaintiff's left knee and back are severe impairments, he noted

17

that plaintiff's "treating physicians did not place any functional restrictions on her activities that would preclude light work activity with the previously-mentioned restrictions." [R. 17]. The ALJ also relied on the objective medical evidence of record in assessing plaintiff's credibility. Plaintiff contends the ALJ failed to consider that her osteopenia and osteoarthritis are generally progressive conditions and that symptoms of both, as they process, include pain and aching. There is no merit to this argument, because the ALJ did address plaintiff's diagnosis of ostepenia. He observed:

> Ms. Morrison was found to have a moderate risk of fracture to her spine and femurs following readings of her bone mineral density (BMD) on July 26, 2001. With T-Scores of -1.6 for her spine and -1.5 for her femurs, her measurements were consistent with osteopenia (Exhibit 7F, p. 78). In October 2003, minor degenerative changes were apparent from four radiology views of her lumbar spine. Sclerotic degenerative changes were present along the anterior patella and patellar femoral articular margins. However, the osseous, joint and soft tissue were otherwise remarkable (Exhibit 7F, pgs. 75-76). Ms. Morrison told a physical therapist on January 28, 2003 that her left knee benefitted from being taped. . . .Dr. Morrel's records include no objective signs or symptoms that would justify the very limited residual functional capacity she gives Ms. Morrison.

[R. 17-18]. Thus the Court finds the ALJ considered relevant factors relating to plaintiff's credibility and he linked his findings to the evidence. In Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995), the court held the ALJ's credibility determination was inadequate because the ALJ simply recited the general factors he considered and then said the plaintiff was not credible based on those factors. The court explained that the ALJ must refer to the specific evidence he is relying on in determining credibility and link his credibility findings to specific evidence. In this instance, the ALJ complied with this standard. In Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the court stated that "our opinion in Kepler does not require a formalized factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Id. at 1372.

18

The Tenth Circuit has held that a claimant's failure to follow a doctor's instructions is a factor in determining credibility. Sims v. Apfel, 172 F.3d 879 (10th Cir. 1999) (unpublished). As shown, plaintiff failed to continued her prescribed physical therapy treatment to address her knee impairment and she failed to quit smoking on the repeated advice of her treating physician.

Further, from a *de novo* review of the entire record, the ALJ's credibility determination is clearly supported by substantial evidence. Credibility determinations are peculiarly the province of the finder of fact, and the Court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed.Appx. 289, 294 (10th Cir. 2008) (unpublished). Such a link exists here.

As her final assignment of error, plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence because the ALJ did not adopt the medical opinion of Dr. Morrel or Dr. Mungul. Plaintiff further contends there is no evidence which directly supports the ALJ's RFC assessment rendering it pure speculation. The Court disagrees.

The ALJ complied with the regulatory requirements in assessing plaintiff's RFC. In finding that plaintiff has the RFC to perform light exertional work, he determined that she could occasionally lift and/or carry 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk (with normal breaks) at least 6 hours in an 8-hour workday, and sit (with normal breaks) about 6 hours in an 8-hour workday. [R. 16]. In determining plaintiff's RFC, the ALJ found that plaintiff's obesity, degenerative joint disease of the left knee, minor degenerative disc disease of the lumbar spine and her osteopenia are severe conditions, but he did not find these severe conditions sufficient to meet or medically equal the criteria specified in the Listing of Impairments. The ALJ applied SSR 02-1p to evaluate her obesity; listing 1.04 to evaluate plaintiff's spine disorder; and listing 1.02 to evaluate

19

her degenerative joint disease of the left knee.  [R. 16].  The ALJ found:

> The combined effects of obesity with other impairments may be greater than without obesity.  Therefore, the impact of obesity upon the claimant's ability to perform work related activities must be considered in arriving at the residual functional capacity.
>
> Listing 1.04 deals with Disorders of the spine . . . . The claimant does not have the nerve root compression, spinal arachnoiditis (requiring changes in position or posture more than once every 2 hours), or lumbar spinal stenosis resulting in an inability to ambulate effectively that are the means of meeting or equaling listing requirements.
>
> The pertinent listing for . . .degenerative joint disease of the left knee is 1.02.  The claimant's impairment does not result in the listing's requirement of an inability to ambulate effectively.

[R. 16].  Further, as shown above, the ALJ  relied in part on the medical evaluation of Dr. Owoso in making his RFC determination.  See supra at 16.

"RFC is what an individual can still do despite his or her limitations," and it constitutes "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, . . .may cause . . .limitations or restrictions that may affect his or her capacity to do work-related. . . activities."  Soc.Sec.R. 96-8p.  To determine a plaintiff's RFC, the ALJ must therefore assess the person's ability to perform the "physical demands of work activity, such as sitting, standing, walking [and] lifting."  20 C.F.R. § 404.1545(b).  Further, the ALJ must determine "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuous basis," and this requires the ALJ to "describe the maximum amount of each work-related activity the individual can perform."  Soc.Sec. R. 96-8p.  Finally, "[t]he RFC assessment must be based on all of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, effects of treatment, records of symptoms, and evidence from attempts to work.  Id.  In so doing, the ALJ "must . . . make every reasonable effort

to ensure that the file contains sufficient evidence to assess RFC." Id.

The ALJ gave specific reasons for rejecting the findings of Dr. Morrel and Dr. Mungul and he gave reasons for discounting plaintiff's testimony. The ALJ properly reviewed all the evidence of record, including the objective evidence consisting of the radiology reports on plaintiff's knees, back and lumbar spine and concluded that plaintiff could perform light exertion work on a regular sustained basis. The Court finds that the ALJ's determination of plaintiff's RFC to perform light work is supported by substantial evidence.

## Conclusion

The Court finds that there is substantial evidence in the record to support the ALJ's decision. The Court further finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 15th day of April, 2010.

T. Lane Wilson
United States Magistrate Judge